1
2
3
4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    SAMUEL LOVE,                          Case No. 20-cv-07137-TSH

8                    Plaintiff,
                                           **ORDER GRANTING MOTION TO
9         v.                               DISMISS**

10   MARRIOTT HOTEL SERVICES, INC.,        Re: Dkt. No. 16

11                   Defendant.

12

13                         **I.      INTRODUCTION**

14        Plaintiff Samuel Love brings this case under the Americans with Disabilities Act ("ADA"),

15   42 U.S.C. §§ 12101, et seq., challenging the reservation policies and practices of Defendant

16   Marriott Hotel Services, Inc.  Pending before the Court is Marriott's Motion to Dismiss pursuant

17   to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 16.  Love filed an Opposition (ECF No. 21)

18   and Defendant filed a Reply (ECF No. 23).  The Court finds this matter suitable for disposition

19   without oral argument and **VACATES** the March 11, 2021 hearing.  *See* Civ. L.R. 7-1(b).  Having

20   considered the parties' positions, relevant legal authority, and the record in this case, the Court

21   **GRANTS** Marriott's motion for the following reasons.

22                         **II.      BACKGROUND**

23        Love is a paraplegic who is substantially limited in his ability to walk and uses a

24   wheelchair for mobility.  First Am. Compl. ("FAC"), ¶ 1, ECF No. 13.  Marriott owns and

25   operates the San Francisco Marriott Marquis located at 780 Mission St., San Francisco, California

26   (the "Hotel").  *Id.* ¶ 2.  Love needs an accessible guestroom, and he needs to be given information

27   about accessible features in hotel rooms so that he can confidently book those rooms and travel

28   independently and safely.  *Id.* ¶ 13.

*United States District Court*
*Northern District of California*

Love "planned on making a trip in February of 2021" to the San Francisco area, and he chose the Hotel for lodging. *Id.* ¶¶ 14-15. On September 11, 2020, Love went to the reservation website at https://www.marriott.com/hotels/maps/travel/sfodt-san-francisco-marriott-marquis/ seeking to book an accessible room, but he alleges "there are very few, if any, accessible features identified for any given room." *Id.* ¶¶ 16, 18. Instead, the reservations website has an "Accessibility" tab that "provides a general list of supposedly accessible features but does not provide any actual data or information beyond a naked label of 'accessible.'" *Id.* ¶ 18. He maintains "it is nowhere near enough to permit a profoundly disabled wheelchair user to have any confidence or come to any conclusions about whether any given hotel room works for him or her." *Id.* ¶ 23. He alleges that

> because the defendant has failed to identify and describe—and/or failed to provide the necessary information to the third party operator of the website reservation system—the core accessibility features in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his accessibility needs, the defendant fails to comply with its ADA obligations and the result is that the plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for him due to his disability.

*Id.* ¶ 32. Love would like to patronize the Hotel but is deterred from doing so "because of the lack of detailed information through the hotel's reservation system. *Id.* ¶ 37.

Love filed this case on October 14, 2020 and filed an amended complaint on January 4, 2021. He brings claims (1) under the ADA, alleging Marriott's failure to ensure its reservation policies and procedures identify and describe accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs, and (2) under the California Unruh Civil Rights Act, which provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f). He seeks injunctive relief, compelling Marriott to comply with the ADA and Unruh Act, damages under the Unruh Act, and attorney's fees and costs.

Marriott filed the present motion on January 21, 2021, arguing that at least four courts in the Ninth Circuit have already concluded that the type of information provided on its reservations

2

website fully complies with the ADA, and that commentary from the U.S. Department of Justice ("DOJ") makes clear the Hotel has provided all the information that is required.

## III.   LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted); Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief.").  In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

United States District Court
Northern District of California

1

## IV.   REQUESTS FOR JUDICIAL NOTICE

2        As part of its motion, Marriott requests the Court take judicial notice of the following

3    documents:

4            1) A copy of the "Landing page" and Accessibility Tab of Marriott's website,

5            https://www.marriott.com/hotels/travel/sfodt-san-francisco-marriott-marquis/ (Ex. 1).

6            2) A copy of the relevant pages from Marriott's website showing the various

7            accessible room descriptions (Ex. 2).

8            3) A list of Love's cases filed in California federal court from PACER (Ex. 3).

9            4) A copy of relevant pages from the online building permit records for

10           Marriott's Hotel from the public website of San Francisco government,

11           https://sfplanninggis.org/pim/?pub=true (Ex. 4)

12           5) The Consent Decree in *United States v. Hilton Worldwide Inc.*, No. 10-cv-1924, ECF

13           No. 5 (D.D.C. Nov. 29, 2010) (Ex. 5).

14   Request for Judicial Notice ("RJN"), ECF No. 16-2.  As part of its reply, Marriott requests the

15   Court take judicial notice of the following additional documents:

16           1)  A copy of the Order Dismissing Complaint with Prejudice, *Arroyo v. JWMFE Anaheim,*

17           *LLC*, Case No. 8::21-cv-00014-CJC-KES (C.D. Cal. Feb. 16, 2021).

18           2)  A copy of the Accessibility Page of JWMFE Anaheim's Marriott website,

19           https://www.marriott.com/hotels/fact-sheet/travel/laxoc-fairfield-anaheim-

20           resort/#accessibil

21           3)  A copy of the Order Dismissing Complaint with Prejudice, *Salinas v. Apple Ten SPE*

22               *Capistrano, LLC*, Case No. 8:20-cv-02379-CJC-DFM (C.D. Cal. Feb. 18, 2021).

23           Love requests the Court not grant the request for judicial notice regarding his litigation

24   history on the basis that it is not relevant to the issues before the Court.  Opp'n at 2.

25           In general, the Court may not look beyond the four corners of a complaint in ruling on a

26   Rule 12(b)(6) motion, except for documents incorporated into the complaint by reference and any

27   relevant matters subject to judicial notice.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.

28   2007) (per curiam); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).  The Court may take

United States District Court
Northern District of California

4

1    judicial notice of matters that are either (1) generally known within the trial court's territorial

2    jurisdiction or (2) capable of accurate and ready determination by resort to sources whose

3    accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

4         Proper subjects of judicial notice when ruling on a motion to dismiss include court

5    documents already in the public record and documents filed in other courts.  *Reyn's Pasta Bella,*

6    *LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Thus, Reply Exhibits 1 and 3, and

7    Motion Exhibit 5 are the proper subjects of judicial notice.  As to Exhibit 3, the Court finds a list

8    of Love's other cases is the proper subject of judicial notice, but it is not relevant here.

9         Websites and their contents may also be proper subjects for judicial notice.  *Threshold*

10   *Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (and cases

11   cited therein); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965 (C.D. Cal. 2005)

12   (recognizing that "websites and their contents may be proper subjects for judicial notice" where

13   party "supplied the court with hard copies of the actual web pages of which they sought to have

14   the court take judicial notice).  Further, under the doctrine of incorporation by reference, the Court

15   may consider not only documents attached to the complaint, but also documents whose contents

16   are alleged in the complaint, provided the complaint "necessarily relies" on the documents or

17   contents thereof, the document's authenticity is uncontested, and the document's relevance is

18   uncontested.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v.*

19   *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it

20   may be incorporated by reference into a complaint if the plaintiff refers extensively to the

21   document or the document forms the basis of the plaintiff's claim.").  "The defendant may offer

22   such a document, and the district court may treat such a document as part of the complaint, and

23   thus may assume that its contents are true for purposes of a motion to dismiss under Rule

24   12(b)(6)."  *Ritchie*, 342 F.3d at 908.  The purpose of this rule is to "prevent plaintiffs from

25   surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are

26   based."  *Swartz*, 476 F.3d at 763 (internal marks omitted).

27        Here, Motion Exhibits 1 and 2 and Reply Exhibit 2 are publicly-accessible web pages, and

28   they are expressly cited and relied upon in Love's complaint.  FAC ¶¶ 18-20.  Accordingly, the

1   Court may consider these documents in evaluating Marriott's motion.  *Barnes v. Marriott Hotel*

2   *Servs., Inc*., 2017 WL 635474, at \*4 (N.D. Cal. Feb. 16, 2017) (taking judicial notice of pages of

3   Marriott's website in website accessibility claim).  Exhibit 4 is a copy of the online building

4   permit records from the San Francisco government website for the Hotel.  Because it is an official

5   government record from a government website, the Court may take judicial notice of it.  *Cota v.*

6   *Maxwell-Jolly*, 688 F. Supp. 2d 980, 998 (N.D. Cal. 2010) ("The Court may properly take judicial

7   notice of the documents appearing on a governmental website.").

8       As this information is not subject to reasonable dispute, the Court **GRANTS** Marriott's

9   request and takes judicial notice of these matters.

10                              **V.    DISCUSSION**

11  **A.    Love's ADA Claim**

12      Title III of the ADA prohibits discrimination in places of public accommodation on the

13  basis of disability, including websites.  42 U.S.C. § 12182(a); *Robles v. Domino's Pizza, LLC*, 913

14  F.3d 898, 905 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019).  As Ninth Circuit precedent makes

15  clear, Love can pursue injunctive relief even if he did not actually visit the Hotel.  *See Civil Rights*

16  *Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1099 (9th Cir. 2017).  To succeed on a

17  discrimination claim under Title III of the ADA, a plaintiff must show that "(1) [s]he is disabled

18  within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates

19  a place of public accommodation; and (3) the plaintiff was denied public accommodation by the

20  defendant because of [her] disability."  *Arizona ex rel. Goddard v. Harkins Amusement Enters.,*

21  *Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).  Marriott does not dispute the first two elements.  The

22  third element is satisfied when the plaintiff can show a violation of accessibility standards.

23  *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1073 (N.D. Cal. 2014).

24      Love contends that Marriott's reservation system violates 28 C.F.R. § 36.302(e).  That

25  section requires that a "public accommodation that owns, leases (or leases to), or operates a place

26  of lodging" must comply with a number of requirements "with respect to reservations made by

27

28

6

United States District Court
Northern District of California

1    any means," including when such reservations are made through a third-party.[1]  In particular, §

2    36.302(e)(1)(ii) requires that public accommodations "[i]dentify and describe accessible features

3    in the hotels and guest rooms offered through its reservations service in enough detail to

4    reasonably permit individuals with disabilities to assess independently whether a given hotel or

5    guest room meets his or her accessibility needs."

6         Love contends Marriott's reservation system violates § 36.302(e) because the website does

7    not provide sufficient detail about accessible features to allow a wheelchair user to make an

8    independent assessment of whether these features would meet his needs.  FAC ¶ 43.  He suggests

9    that more detailed descriptions of rooms or features would be appropriate, including whether there

10   is at least 30 inches width on the side of the bed so his wheelchair can pull up next to the bed for

11   transfer, whether the desk where he will eat and work has sufficient knee and toe clearance,

12   whether he can transfer to and use the toilet, whether the restroom sink provides appropriate knee

13   clearance, whether the restroom mirror is mounted at a lowered height so that wheelchair users can

14   use it, and what type of shower is available and whether it has an in-shower seat grab bars

15   mounted on the walls, and a detachable hand-held shower wand.  *Id.* ¶ 29.

16        In response, Marriott points to an Appendix to the regulations, 28 C.F.R. Pt. 36, App. A, in

17   which the DOJ provides the following commentary regarding accessibility information required

18   under the regulations:

---

[1] (1) Reservations made by places of lodging. A public accommodation that owns, leases (or
leases to), or operates a place of lodging shall, with respect to reservations made by any means,
including by telephone, in-person, or through a third party-

(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities
can make reservations for accessible guest rooms during the same hours and in the same
manner as individuals who do not need accessible rooms;

(ii) Identify and describe accessible features in the hotels and guest rooms offered through
its reservations service in enough detail to reasonably permit individuals with disabilities
to assess independently whether a given hotel or guest room meets his or her accessibility
needs;

(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities
until all other guest rooms of that type have been rented and the accessible room requested
is the only remaining room of that type . . ..

28 C.F.R. § 36.302(e).

1
2
3
4
5
6
7
8

> The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities.  Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance.  For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices).  Based on that information, many individuals with disabilities will be comfortable making reservations.

9
10
11

> For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms.

12  28 C.F.R. Pt. 36, App. A, "Title III Regulations 2010 Guidance and Section-by-Section Analysis"

13  (the "2010 Guidance"); *see also* Nondiscrimination on the Basis of Disability by Public

14  Accommodations and in Commercial Facilities, 75 FR 56,236, 56,274 (Sept. 15, 2010) (to be

15  codified at 28 C.F.R. pt. 36).[2]

16          The DOJ's explanation sets forth four key principles: (1) "a reservations system is not

17  intended to be an accessibility survey"; (2) "it may be sufficient to specify that the hotel is

18  accessible and, for each accessible room, to describe the general type of room (e.g., deluxe

19  executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing

20  facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and

21  visual notification devices)"; (3) "[f]or older hotels with limited accessibility features, information

22  about the hotel should include, at a minimum, information about accessible entrances to the hotel,

23  the path of travel to guest check-in and other essential services, and the accessible route to the

24  accessible room or rooms"; and (4) "[f]or older hotels, information about important features that

25  do not comply with the 1991 Standards."  28 C.F.R. Pt. 36, App. A.  The DOJ guidance is

26  "entitled to substantial deference."  *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1069 (9th Cir.

27

28  ---
[2] Also available online at
https://www.ada.gov/regs2010/titleIII_2010/titleIII_2010_regulations.htm#a2010guidance.

1    2015) (DOJ's guidance interpreting requirements of the ADA is "entitled to substantial

2    deference") (internal quotation marks and citation omitted); *Robles*, 913 F.3d at 904 ("DOJ's

3    administrative guidance on ADA compliance is entitled to deference") (citing *Bragdon v. Abbott*,

4    524 U.S. 624, 646 (1998)); *Fortyune v. City of Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014) ("The

5    DOJ's interpretation of its ADA implementing regulations is entitled to controlling weight unless

6    it is plainly erroneous or inconsistent with the regulation.") (internal quotation marks and citations

7    omitted).

8        Based on Love's own allegations and the evidence provided by Marriott, the Court finds

9    Marriott provides accessible features descriptions that exceed the level of detail proposed by the

10   ADA guidance.  Although the FAC asserts that the website "does not provide any actual data"

11   about the accessibility features offered by the Hotel, Love attached a copy of portions of

12   Marriott's website into his FAC that contradict his allegation.  For example, the room description

13   of Love's room, copied and pasted into his complaint, confirms that the room provides:

14   "Accessible guest rooms with 32" wide doorways," "Accessible route from public entrance to

15   accessible guest rooms," "Alarm clock telephone ringers," "Bathroom grab bars," "Bathtub grab

16   bars Bathtub seat," "Deadbolt locks, lowered," "Door night guards, lowered," "Doors with lever

17   handles," "Electrical outlets, lowered," "Flashing door knockers," "Hearing accessible rooms

18   and/or kits," "Roll-in shower," "Shower wand, adjustable," "TTY/TTD available," "TV with

19   close-captioning," "Toilet seat at wheelchair height," "Transfer shower," "Vanities, accessible,"

20   "Viewports, lowered."  FAC ¶ 20.  The Hotel website, as quoted by Love, further confirms other

21   "Accessible Hotel Features" including "Accessible Self-parking," "Self-parking, accessible

22   spaces," "Service animals are welcome," "Elevators," and "Accessible Routes from Public

23   Entrance" to all areas of the Hotel including the "Business Center," "Fitness Center," "Meeting

24   spaces and ballrooms," "Public entrance alternative," "Registration Desk Pathway," and

25   "Registration desk," "Restaurant(s)/Lounge(s).  *Id.* ¶¶ 18-19.  The Court finds these descriptions

26   and this level of detail is appropriate and acceptable.  Previous decisions confirm as much.  In

27   *Barnes*, the plaintiff argued that Marriott's reservation system violated 28 C.F.R. § 36.302(e)

28   "because the website does not provide sufficient detail about accessible features to allow a

United States District Court
Northern District of California

1    wheelchair user to make an independent assessment of whether these features would meet her

2    needs."  2017 WL 635474, at *9.  The court noted that Marriott's website described "Accessible

3    Room Features" for individual room types: "[t]his room type offers mobility accessible rooms[;]

4    [t]his room type offers accessible rooms with roll in showers[.]".  *Id.* (alterations in original).  It

5    found "this level of detail is appropriate and acceptable" under the guidelines and granted

6    summary judgment in Marriott's favor.  *Id.* at *10.  The information provided by Marriott in this

7    case (and by Love in his FAC) is far more extensive than the information provided in *Barnes*.

8         In *Strojnik v. Orangewood*, 2020 U.S. Dist. LEXIS 11743 (C.D. Cal. January 22, 2020),

9    *aff'd Strojnik v. Orangewood LLC*, 829 F. App'x 783 (9th Cir. 2020), the court rejected another

10   ADA litigant's claim that the website contained insufficient information.  "A website need not list

11   its compliance or non-compliance with every [ADA Standards for Accessible Design] provision to

12   satisfy 28 C.F.R. § 36.302(e)(ii)."  *Id.* at *20-22.  The court noted that the guidance on this

13   provision "recognizes that a reservations system is not intended to be an accessibility survey," and

14   "[b]ecause of the wide variations in the level of accessibility that travelers will encounter . . . it

15   may be sufficient to specify that the hotel is accessible" and to provide basic facts about each

16   accessible room.  *Id.* at *20-21 (citing 28 C.F.R. § Pt. 36, App. A).  It also noted "the DOJ

17   acknowledges that 'individuals with disabilities may wish to contact the hotel or reservations

18   service for more detailed information.'"  *Id.* at *21 (citing 28 C.F.R. § Pt. 36, App. A).  In granting

19   the defendant's motion to dismiss without leave to amend, the court held "that websites need not

20   include all potentially relevant accessibility information; if a website was required to have all

21   relevant information, individuals would not need to call the hotel to get further information."  *Id.*

22        In *Strojnik v. Kapalua Land Company*, the court rejected the plaintiff's contention that

23   insufficient information on a website constituted an actionable ADA violation that actually denied

24   him equal access to the hotel property.  2019 WL 4685412 (D. Haw. Aug. 26, 2019), *aff'd*, 801 F.

25   App'x 531 (9th Cir. 2020).  There, the court held that "the facts alleged in support of Plaintiff's

26   ADA claim relate to his inability to obtain facts about the Property, not the goods and services"

27   provided at the defendant's hotel.  *Id.* at *6.  The court noted that "Plaintiff fails to cite to any

28   legal authority providing that failure to detail all accessible and inaccessible elements of a public

United States District Court
Northern District of California

accommodation results in an ADA violation." *Id.* at *7.  In recommending dismissal without leave to amend, the court found the plaintiff failed to allege an actionable violation of the ADA because "there is a critical distinction 'between an inability to use a website to gain information about a physical location and an inability to use a website that impedes access to enjoy a physical location,' the former being "insufficient to state a claim." *Id.* (citing *Price v. Everglades Coll., Inc.*, 2018 WL 3428156, at *2 (M.D. Fla. July 16, 2018)).

Other courts have also made clear that the regulations are not intended to be an accessibility survey.  *See Strojnik v. 1315 Orange LLC*, 2019 WL 5535766, at *2 (S.D. Cal. Oct. 25, 2019) (Plaintiff "does not cite any authority suggesting a hotel has an obligation to describe to the public the physical layout of its rooms in exhaustive detail without being asked"); *Rutherford v. Evans Hotels, LLC*, 2020 WL 5257868, at *17 (S.D. Cal. Sept. 3, 2020) ("Mr. Rutherford testified that the Websites described rooms as being 'accessible,' some even 'in some detail.'  But just because Mr. Rutherford would like additional detail does not mean that he is entitled to it under Section 36.302(e)(1)(ii).") (dismissing complaint for lack of standing (transcript citations omitted).

As noted above, Marriott's website includes a level of detail well beyond what was deemed to be sufficient in these cases.  First, there are Love's allegations in FAC, ¶¶ 18-20, which on their own are sufficiently detailed to establish that there is no ADA violation.  Second, there is the Hotel's Accessibility section on its website, which gives a virtual Accessibility Survey of both the rooms and the property.  RJN, Ex. 1.  If a guest requires additional information "about the physical features of our accessible rooms, common areas, or special services relating to a specific disability," they are invited to "call +1 415-896-1600."  Based on the DOJ's guidance and cases discussed above, the Court finds this is more than sufficient.

Second, the 2010 Guidance cited above makes clear that details about a hotel's accessible features - "such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (e.g., bathtub bench)" can be provided "once reservations are made" and do not have to be provided on the reservations website.  *See* 28 C.F.R. Pt. 36, App. A, "Title III Regulations 2010 Guidance and Section-by-Section Analysis."  This alone shows that

the very type of specificity that Love desires in this case is not required on a website. "This provides further support that websites need not include all potentially relevant accessibility information; if a website was required to have all relevant information, individuals would not need to call the hotel to get further information." *Orangewood LLC*, 2020 U.S. Dist. LEXIS 11743, at *21. Love refers to the 2010 Guidance "musings by the DOJ," Opp'n at 4, but, as noted above, the DOJ's guidance is entitled to substantial deference. *Kohler*, 782 F.3d at 1069.

The DOJ's enforcement position in litigation about the accessibility guidelines further reinforces the sufficiency of the website's information. *See* RJN, Ex. 5 (Consent Decree in *United States v. Hilton Worldwide, Inc.*, No. 10-cv-1924, ECF No. 5 (D.D.C. Nov. 29, 2010). In the HWI litigation, the DOJ alleged, inter alia, that the defendant's online reservations system did not "accurately reflect the inventory of accessible types of rooms and amenities available at each property[.]" HWI Consent Decree ¶ 8(c). The consent decree was entered to resolve the DOJ's ADA enforcement action involving a "system of more than 2,800 hotels throughout the United States . . . ." *Id.* ¶ 1. Under the HWI Consent Decree, the defendant entity was obligated to ensure that its reservations system:

> [I]dentify by room type which rooms are accessible, and for each such room type, which of the following accessibility or other features it has:
> (i) Number of beds
> (ii) Size of bed(s)
> (iii) Roll-in shower or accessible tub
> (iv) Visual alarms
> (v) Executive level
> (vi) Suite
> (vii) Kitchen/kitchenette
> (viii) View, if a particular hotel charges more for a room based on the view.

*Id.* (HWI Consent Decree, ¶ 25(a)(i)-(viii)). In other words, the DOJ required the same guestroom accessibility information enumerated in its 2010 Guidance (and all of which is present, as applicable, on the website in the instant case). *Compare* HWI Consent Decree, ¶25(a)(i)-(viii) with 28 C.F.R. Pt. 36, App. A ("it may be sufficient . . . for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features

United States District Court
Northern District of California

1   available in the room (e.g., alarms and visual notification devices")).  This is a further indication

2   of the DOJ's consistent position concerning the accessibility information required to comply with

3   the regulations.  *See Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 832 n.8 (9th Cir. 2012)

4   (explaining that "deference to agency litigating positions" is warranted based on "factors such as

5   the consistency of its position and its application of that position through administrative practice").

6   Moreover, the court's approval of the HWI Consent Decree reflects a judicial determination that

7   the requirements imposed were "fair, adequate, reasonable, and appropriate under the particular

8   facts[.]"  *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (quoting

9   *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980));

10  *accord United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) ("Before approving a

11  consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and

12  reasonable . . . [i]n addition, because it is a form of judgment, a consent decree must conform to

13  applicable laws.") (citations omitted).

14          Love contends "the Consent Decree never mentions the relevant regulation, never cites or

15  uses the regulatory language, and was a settlement agreement reached in November of 2010—

16  almost half a year before the regulation at issue in this case because effective and enforceable, i.e.,

17  March 15, 2011."  However, the Consent Decree tracks the requirements of the Reservations Rule

18  in ¶ 25, further indication of the DOJ's consistent position concerning the accessibility

19  information required to comply with the Reservations Rule.  *See Stevedoring Servs. of Am., Inc.*,

20  697 F.3d at 832 n.8 (explaining that "deference to agency litigating positions" is warranted based

21  on "factors such as the consistency of its position and its application of that position through

22  administrative practice").  Moreover, the court's approval of the HWI Consent Decree reflects a

23  judicial determination that the requirements imposed were "fair, adequate, reasonable, and

24  appropriate under the particular facts[.]"  *Citizens for a Better Env't*, 718 F.2d at 1126 (quoting

25  *Metro. Hous. Dev. Corp.*, 616 F.2d at 1014); *United States v. State of Oregon*, 913 F.2d at 580

26  ("Before approving a consent decree, a district court must be satisfied that . . . a consent decree

27  must conform to applicable laws.") (internal citations omitted).

28          In sum, the Court finds Marriott's website complies with the regulations.  As discussed

13

above, the Accessibility section of the website not only provides the information contemplated by the 2010 Guidance ("information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms,"28 C.F.R. Pt. 36, App. A), but also detailed descriptions of the guest rooms' accessibility features. Indeed, the information provided under the website's accessibility tab goes beyond the 2010 Guidance.  Accordingly, the Court finds Love fails to state a claim under the ADA for which relief can be granted and the first cause of action must be dismissed.  As Love's pleading could not be cured by the allegation of other facts, the Court finds leave to amend would be futile.

**B.      Supplemental Jurisdiction**

The Court, under 28 U.S.C. § 1367(c), may decline to exercise supplemental jurisdiction under circumstances that include when "the district court has dismissed all claims over which it ha[d] original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  As the Court has dismissed the only federal claim before it, which provided the only basis for its original jurisdiction, the Court will exercise its discretion to decline jurisdiction over the remaining state law claims.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Marriott's motion to dismiss.  As leave to amend would be futile, dismissal is **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: March 3, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

14